Gabriel M. Haws, ISB #6999
MORRIS BOWER & HAWS PLLC
12550 W. Explorer Drive, Suite 100
Boise, Idaho 83713 or
1305 12th Ave. Rd.,
Nampa, Idaho 83686
Telephone:  (208) 345-3333
Fax No.:  (208) 345-4461
ghaws@morrisbowerhaws.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANGELA M. STAUP, an individual; | Case No.   1:21-cv-00461 |
| Plaintiff, | **VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| BRUNDAGE MOUNTAIN COMPANY, an Idaho corporation; and TRAVIS K. YANO, an individual, | |
| Defendants. | |

COMES NOW, the above-named Plaintiff, by and through her counsel of record, Morris Bower & Haws, PLLC, initiates this civil action by filing this Verified Complaint and Demand for Jury Trial ("Complaint") against Defendants, Brundage Mountain Company and Travis K. Yano, and states as follows:

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 1

## PARTIES

1.      At all times relevant hereto, Angela M. Staup ("Ms. Staup" or "Plaintiff") was a resident of Valley County, Idaho. During relevant times herein, Ms. Staup was employed as Terrain Park Manager and/or snowmaker by Brundage Mountain Company.

2.      At all times relevant to the allegations herein, Defendant Brundage Mountain Company ("Brundage") was an Idaho Corporation with its principal place of business located in Adams County, Idaho.

3.      At all times relevant to the allegations herein, Defendant Travis K. Yano ("Yano"), resided in Valley County, Idaho. Yano was sporadically employed by Brundage during relevant times. Upon information and belief, Yano has moved to the state of Oregon.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over Ms. Staup's federal claims pursuant to 28 U.S.C. §§1331 and 1332, and supplemental jurisdiction with respect to state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper, pursuant to 28 U.S.C. §1391 (b) and (c) because a substantial part of the events giving rise to the claims occurred within Adams County, and Defendant Brundage's principal place of business is located in Adams County, Idaho.

## GENERAL ALLEGATIONS

6.      The discrimination and retaliation claims relate to Brundage's actions and/or omissions in preventing Yano's sexual battery on the person of Ms. Staup and its actions and/or omissions in its subsequent handling of Ms. Staup's report of sexual battery. The intentional battery and negligent and intentional infliction of emotional distress claims relate to injuries sustained by Ms. Staup as a result of a sexual battery by Yano.

**BACKGROUND**

7.      Ms. Staup is an avid skier and snowboarder and had lived in Valley County for thirty-four (34) years.

8.      Brundage is a popular ski resort located in Adams County, Idaho. Brundage hires seasonal employees for each ski season.

9.      At all relevant times, Brundage had more than fifteen (15) employees.

10.     Yano had been employed by Brundage for approximately twenty (20) ski seasons prior to the 2019 – 2020 ski season and performed duties that included the following: grooming, snowmaking, terrain park, and freestyle coach.

11.     Ms. Staup had been employed by Brundage as a seasonal employee in November 2018 for the 2018 – 2019 ski season. She was the Terrain Park Manager, which duties included: snow grooming and the design, construction, maintenance, and testing of the terrain park and its structures. These tasks required her to work in connection with snow surfaces (grooming and snowmaking), lift operations and maintenance, guest services, marketing, and management.

12.     In the fall of 2019, Ms. Staup was hired as the Terrain Park Manager for Brundage for the 2019 - 2020 ski season.

13.     Yano had seniority over Ms. Staup. Yano was also paid more than Ms. Staup.

14.     Yano had immediate higher authority over Ms. Staup and was authorized to criticize, correct, and supervise her work and require her to work under his supervision.

15.     Yano and Ms. Staup's successively higher upline supervisor, Brian Amundson, frequently placed Yano in a position of supervision over Ms. Staup.

16.     After her hire for the 2019 – 2020 ski season, Ms. Staup told Brundage managers, Rob McFadden and Brian Amundson, that she did not want to be working alone with Yano because

of his reputation for taking advantage of women and her persistent problems working with him in the past. Specifically, she told them that she did not want to overlap shifts with him without other employees present.  She also told them that she did not want to communicate directly with him because of his tendency to call and harass female workers. Brundage did not honor these requests.

## EVENTS

17.     On December 1, 2019, Ms. Staup was working on a terrain park structure in the shop owned by Brundage. Later in the evening, Rachel Wessel (Ms. Wessel), who was Brundage's Human Resource representative came into the shop. At about the same time, Yano entered the shop. After a brief conversation, Yano left. Ms. Wessel left, leaving Ms. Staup alone in the shop. After Ms. Wessel left, Yano returned and just he and Ms. Staup were in the shop.

18.     Immediately upon returning to the shop, Yano approached Ms. Staup. Without notice and without consent, he groped Ms. Staup's genital area.

19.     She protested, but he continued. She was able to get him to stop. He continued to ask her about her sex life, propositioned her for sex, repeatedly made several sexually charged comments, and crudely asked if she noticed something "between her legs" referencing his genitals (collectively "Yano's Conduct").

20.     On or between December 2nd and December 4th, 2019, Ms. Staup told her upline supervisor, Brian Amundson, that she did not want to be left alone with Yano and told him about Yano's Conduct.  Brian Amundson supervised Ms. Staup and Yano in their snow-making and grooming.

21.     On December 2, 2019, Ms. Staup told Sue Carter, who was employed in accounting/administration at Brundage, about Yano's Conduct.

22.     On or about December 4, 2019, Ms. Staup reported Yano's Conduct to Brundage's Human Resource representative, Rachel Wessel. She also told Rachel Wessel that she wanted to make a sexual harassment claim against Yano but wanted it to be "anonymous" because she was afraid of retribution by Yano. Ms. Wessel told Ms. Staup that she did not know how to handle the situation and she would get back to Ms. Staup.

23.     Over the next several days and weeks nothing happened, and nothing changed regarding Ms. Staup's work environment, schedule, or line of authority.

24.     Between December 1, 2019, and January 12, 2020, Brundage managers and supervisors, including Brian Amundson, repeatedly placed Ms. Staup in positions where only she and Yano would be working alone together later at night. Ms. Staup had to ask other employees to not leave her alone with Yano because Brundage's management did not remedy the situation. This was against her requests that Yano not be around her. Brundage's supervisors and/or managers continued to place Ms. Staup in a position where she had to hide or leave to avoid continued contact with Yano.

25.     Ms. Staup told several upline managers about Yano's Conduct, including Ken Rider (General Manager and Board Member) on December 26, 2019, and Marlene Berg (Board Member) on January 9, 2020, because Brundage had not done anything to remedy the situation with Yano.

26.     Despite multiple reports by Ms. Staup, no investigation into Yano's Conduct was performed by Brundage in 2019.

27.     Yano voluntarily terminated his employment with Brundage on or about December 8, 2019, for issues apparently unrelated to this matter.

28.     On or about December 22, 2019, Brundage's manager, Brian Amundson, rehired Yano and gave him an increase in pay.

29.     On December 26, 2019, Ms. Staup spoke with Ms. Wessel again about Yano's Conduct, the rehire and pay raise for Yano, and the lack of investigation.

30.     In the days following December 26, 2019, Ms. Staup heard other employees making negative remarks about her credibility and that Yano was telling people that Ms. Staup misinterpreted his actions. This was humiliating, embarrassing, and stressful for Ms. Staup.

31.     On December 31, 2019, Ms. Staup contacted Ms. Wessel again and told her what Yano was telling other employees and the retribution she was getting from other employees. Ms. Staup told her that Yano's retribution was making her uncomfortable, and it was making it difficult for her to accomplish her work.

32.     On December 31, 2019, Ms. Staup filed a police report against Yano alleging sexual battery.

33.     Prior to January 3, 2020, Brundage had not investigated or remedied Ms. Staup's complaints about Yano's conduct and the continued hostile and abusive environment.

34.     Yano, who was Brundage's employee and/or manager, altered the conditions of Ms. Staup's employment so that she no longer felt like she could work in the same area or at the same time as Yano.  Ms. Staup was fearful of retribution from Yano and afraid to be seen by him.

35.     Also, Yano began telling other co-workers that Ms. Staup was not credible and contradicted Ms. Staup's accounts. Other co-workers confronted her about the differences between her and Yano. Brundage's failure to timely and reasonably remedy the situation and Yano's continued speaking out against Ms. Staup created a workplace rife with rumors and public scrutiny, effectively re-victimizing Ms. Staup.

36.     Ms. Staup once again reported Yano's Conduct, the subsequent stress and anxiety she felt in her current position, and the hostility she felt in her position to Brundage's Human Resource representative, Ms. Wessel. She was clear that Yano's Conduct on December 1, 2019, and subsequent conduct of disparaging her reputation, created a stressful and hostile work environment for her.

37.     Brundage, via Ms. Wessel, accepted Ms. Staup's complaints as a "formal documented complaint" on January 3, 2020.

38.     Brundage conducted an "investigation" and determined on January 12, 2020, that Ms. Staup's claims were unsubstantiated even though Yano later pleaded guilty to the misdemeanor crime of battery against Ms. Staup from the December 1, 2019, incident.

39.     On January 12, 2020, Ms. Wessel met with Ms. Staup and told her that her claims against Yano were unsubstantiated.

40.     Despite knowing that Ms. Staup was struggling emotionally and psychologically from the events outlined above, Ms. Wessel "coached" Ms. Staup and warned her that investigation was "confidential" and that she could not share the "details of the events, the investigation, and the outcome" of the investigation with "others" (collectively "Coaching"). Ms. Wessel also told Ms. Staup that violating the Coaching by telling "anyone" about the fact and nature of investigation could result in termination.

41.     Prior to this incident, Ms. Staup had never received any negative employment reviews or coaching.

42.     Ms. Wessel placed Ms. Staup on a two-week paid leave so she could "recover" emotionally and psychologically from the trauma.

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 7

43.     Regarding the criminal investigation into Yano, a protection order was issued on Ms. Staup's behalf against Yano on January 15, 2020.

44.     At some point between January 15 and January 28, 2020, while staying and skiing at Tamarack Resort, Ms. Staup learned that Yano was working at Tamarack. She provided a copy of the protection order to Tamarack's security personnel. She also learned that Brundage's manager, Brian Amundson, had called Tamarack and provided a positive reference for Yano that allowed for Yano to be hired there.

45.     On January 28, 2020, Brundage terminated Ms. Staup's employment on the pretext that she violated the Coaching from Ms. Wessel.

46.     Brundage never asked Ms. Staup for any information regarding whether she violated the Coaching prior to terminating her.

47.     Brundage fired Ms. Staup even though it knew, or should have known, that she did not violate the Coaching.

48.     Despite knowing of her fragile emotional and psychological state regarding the incidents involving Yano and Brundage's investigation, Brundage intentionally and recklessly terminated Ms. Staup's employment on an erroneous third-party statement from a Tamarack supervisor claiming that Ms. Staup had violated the Coaching and had caused Tamarack's HR to put pressure on him to terminate Yano's employment at Tamarack.

49.     Brundage's termination of Ms. Staup was pretextual.

50.     Brundage failed to take prompt, effective remedial action reasonably calculated to end the harassment by Yano and remedy Ms. Staup's hostile work environment.

51.     Brundage's termination of Ms. Staup was retaliatory because she engaged in the protected activity of reporting Yano's Conduct and participating in an investigation by Brundage and law enforcement.

52.     At all relevant times and related to the facts alleged in this Complaint, the actions and conduct of Brundage's supervisors and managers, including, but not limited to: Travis Yano, Rachel Wessel, Brian Amundson, Ken Rider, Marlene Berg, were performed within the course and scope of their authority, whether actual or apparent, granted by Brundage.

53.     Yano pleaded guilty to committing the crime of battery on the person of Ms. Staup on July 12, 2021, in the Third Judicial District of Idaho, Adams County, case number CR02-20-000037.

## FIRST CAUSE OF ACTION
### (Sexual Harassment 42 U.S.C.§2000e)

54.     Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

55.     At all relevant times, Brundage employed fifteen (15) or more employees.

56.     While employed at Brundage, Yano subjected Ms. Staup to unwanted sexual conduct while on shift as an employee and manager for Brundage. Yano's Conduct also occurred on property owned by Brundage and while Brundage paid Yano and Ms. Staup for performing employment-related duties.

57.     Yano's Conduct was severe and pervasive. His Conduct included groping Ms. Staup's genital area despite her protests, propositioning her for sex, making crude and sexually charged comments to Ms. Staup, and then disparaging Ms. Staup's credibility with co-workers.

58.      Yano's Conduct while he was a Brundage employee and/or manager and Brundage's subsequent negligence in investigating the incident and supervising and training Yano,

as explained herein, altered the conditions of Ms. Staup's employment for the following reasons: i) She no longer felt safe working in the same area or at the same time as Yano; ii) his conduct created fear in her of retribution from Yano and she was afraid to be seen by him, not to mention work late at night, alone, on a ski mountain with him; iii) Yano also began telling other co-workers that she was not credible and contradicted her accounts, which encouraged other co-workers to confront her about Yano's groping of her genitals and created a stressful work environment for her, and; iv) Brundage opted not to investigate the matter which allowed the work environment for her to be more stressful, humiliating, degrading, and difficult.

59.     Ms. Staup informed Brundage's Human Resource representative, Ms. Wessel that Yano's Conduct on December 1, 2019, and subsequent conduct of disparaging her reputation, created a stressful, humiliating, degrading, and hostile work environment for her.

60.     Brundage is liable and responsible for Yano's Conduct because he was Ms. Staup's co-worker and supervisor at the time of the incident, and Brundage knew or should have known, of Yano's proclivity to sexually harass female co-workers.

61.     Brundage's failure to investigate, remedy, and prevent a hostile work environment for Ms. Staup allowed Yano and other co-workers to engage in conduct that re-victimized Ms. Staup and continued to allow them to create an abusive working environment.

62.     Ms. Staup perceived the work environment as hostile between December 1, 2019, and January 12, 2020.

63.     Brundage failed to remedy the harassment after learning of Yano's Conduct in December of 2019 by opting not to conduct their investigation in a fair and timely fashion.

64.     Brundage ratified and condoned the conduct of Yano when Brundage, or its agents, rehired Yano on or about December 21st or 22nd, 2019, and awarded him a pay increase of $0.50 per hour.

65.     Upon information and belief, Brundage further ratified and condoned the conduct of Yano, when Brundage, or its agents, provided Yano a positive employment reference to work at the nearby Tamarack Resort.

66.     As a direct result of Brundage's unlawful conduct, Ms. Staup was injured and has been forced to incur necessary expenses for medical, psychological, and counseling care and expenses, emotional distress, loss of enjoyment of life, future counseling costs and expenses, lost wages, physical and mental stress, and will continue to incur such expenses for such care, together with future pain and suffering, physical stress, suffering, and impairment. The specific amount of these damages to be proven at trial is more than $25,000.00.

67.     Plaintiff has been compelled to employ the services of Morris Bower & Haws PLLC to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees for the services of said attorneys.

68.     Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

### SECOND CAUSE OF ACTION
**(Retaliation 42 U.S.C.§2000e3)**

69.     Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

70.     Ms. Staup engaged in protected activity under federal law when she informally and/or formally reported to supervisors and managers at Brundage the scope and nature of Yano's Conduct on December 1, 2019, and the resulting work environment caused by Yano and other co-

workers due to Yano's continued re-victimization of Ms. Staup and Brundage's decision to not investigate Ms. Staup's claims.

71.    Ms. Staup also engaged in protected activity when she reported to law enforcement the crime committed by Yano (which he later admitted to committing) when she petitioned for and obtained a protection order against Yano, and when she provided the information regarding that protection order to Tamarack resort, where she was staying at or about the time it was issued.

72.    Within days or weeks of her report of unlawful activity and hostile work environment, Brundage placed Ms. Staup on a two-week leave on January 12, 2020, and terminated Ms. Staup's employment on January 28, 2020, in reliance upon erroneous information.

73.    Brundage placed Ms. Staup on leave and/or terminated Ms. Staup's employment because she engaged in protected activity. Or, in the alternative, Ms. Staup's protected activity was a motivating factor for Brundage placing her on leave and/or terminating her.

74.    As a direct result of Brundage's unlawful conduct, Ms. Staup was injured and has been forced to incur necessary expenses for medical, psychological, and counseling care and expenses, emotional distress, loss of enjoyment of life, future counseling costs and expenses, lost wages, physical and mental stress, and will continue to incur such expenses for such care, together with future pain and suffering, physical stress, suffering, and impairment. The specific amount of these damages to be proven at trial is in excess of $25,000.00.

75.    Plaintiff has been compelled to employ the services of Morris Bower & Haws PLLC to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees for the services of said attorneys.

76.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

## THIRD CAUSE OF ACTION
### (Negligence: Failure to Adequately Supervise– Brundage)

77.     Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

78.     Brundage owed a duty to exercise due care in the supervision of its employees and to protect Ms. Staup from foreseeable risks of harm.

79.     Brundage knew or should have known of the dangerous propensities of Yano towards other female employees generally, and Ms. Staup specifically.

80.     Brundage breached this duty by failing to exercise due care and to take reasonable precautions to supervise Yano recklessly, and/or negligently leaving him alone, unsupervised, with Ms. Staup late at night in a shop owned by Brundage despite Ms. Staup's request that Brundage prevent such circumstances.

81.     Brundage's actions, as alleged hereinabove, were willful, reckless, and intentional and constitute a gross deviation from the reasonable standards of conduct.

82.     As a direct and proximate result of Brundage's breach of its duties towards Ms. Staup, Ms. Staup was injured and suffered damages because of Yano's Conduct. Specifically, her injuries include, but are not limited to i) physical illness and pain from worry, concern, anxiety, and stress; ii) crying, iii) humiliation; iv) degradation; v) headaches; vi) fear, and; vii) anxiety.

83.     As a result of Defendant Yano's conduct, she has been forced to incur necessary expenses for medical, psychological, and counseling care and expenses, emotional distress, loss of enjoyment of life, future counseling costs and expenses, lost wages, physical and mental stress, and will continue to incur such expenses for such care, together with future pain and suffering,

physical stress, suffering, and impairment. The specific amount of these damages to be proven at trial is in excess of $25,000.00.

84.     Plaintiff has been compelled to employ the services of Morris Bower & Haws PLLC to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees for the services of said attorneys.

85.     Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

**FOURTH CAUSE OF ACTION**
**(Negligence: Failure to Train – Brundage)**

86.     Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

87.     Brundage had a duty to adequately train its employees to perform the work and services for which they are employed in a safe, prudent, and reasonable manner.

88.     Brundage had a duty to exercise reasonable care to ensure that its employees were properly and adequately trained to perform the work and services for which they were employed in a manner to avoid foreseeable risks of harm to others.

89.     Upon information and belief, Brundage breached that duty by failing to train and/or inadequately training its managers, supervisors, and employees regarding sexual harassment and/or sexual misconduct in the workplace, and the handling of claims of sexual harassment and/or sexual misconduct in the workplace.

90.     As a direct and proximate result of Brundage's breach of their duty, Ms. Staup suffered emotional and psychological injuries.

91.     But for Brundage's negligence in failing to and/or adequately train its employees, managers, and supervisors on sexual harassment and/or sexual misconduct in the workplace and how to handle such claims, Ms. Staup would not have suffered injuries.

92.     As a direct result of Brundage's negligence, Ms. Staup was injured and has been forced to incur necessary expenses for medical, psychological, and counseling care and expenses, emotional distress, loss of enjoyment of life, future counseling costs and expenses, lost wages, physical and mental stress, and will continue to incur such expenses for such care, together with future pain and suffering, physical stress, suffering, and impairment. The specific amount of these damages to be proven at trial is in excess of $25,000.00.

93.     Plaintiff has been compelled to employ the services of Morris Bower & Haws PLLC to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees for the services of said attorneys.

94.     Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

**FIFTH CAUSE OF ACTION**
**(Intentional Tort: Battery – Yano)**

95.     Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

96.     Defendant Yano's actions in the sexual battery of Ms. Staup, as alleged hereinabove, constitute a battery against Plaintiff Ms. Staup's person.

97.     Defendant Yano intentionally touched Ms. Staup's genital area.

98.     Ms. Staup did not permit or consent to the touching by Defendant Yano.

99.     Defendant Yano knew or should have known the touching was not permitted.

100.    Defendant Yano's touching of Ms. Staup was unlawful, harmful, and/or offensive.

101.    Defendant Yano's Conduct, as alleged hereinabove, was willful, reckless, and intentional and constitutes a gross deviation from the reasonable standards of conduct.

102.    As a direct result of the battery, Ms. Staup has suffered injuries and damages. As a result, she has been forced to incur necessary expenses for medical, psychological, and counseling care and expenses, emotional distress, loss of enjoyment of life, future counseling costs and expenses, lost wages, physical and mental stress, and will continue to incur such expenses for such care, together with future pain and suffering, physical stress, suffering, and impairment. The specific amount of these damages to be proven at trial is in excess of $25,000.00.

103.    Plaintiff has been compelled to employ the services of Morris Bower & Haws PLLC to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees for the services of said attorneys.

104.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

### SIXTH CAUSE OF ACTION
**(Negligence Per Se Violation of Idaho Code §§18-903 and 924– Defendant Yano)**

105.    Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

106.    In the alternative to an intentional tort of battery, Plaintiff alleges that Yano was negligent per se in his unlawful touching of Ms. Staup's genitals.

107.    Idaho Code §18-903 defines a battery as any:

(a)   Willful and unlawful use of force or violence upon the person of another; or

(b)   Actual, intentional and unlawful touching or striking of another person against the will of the other; or

(c)   Unlawfully and intentionally causing bodily harm to an individual.

108.   Idaho Code §18-904 provides that a battery is punishable by a fine not exceeding one thousand dollars ($1,000) or imprisonment in the county jail not to exceed six (6) months, or both.

109.   Idaho Code §18-924 defines sexual battery as:

any willful physical contact, over or under the clothing, with the intimate parts of any person, when the physical contact is done without consent and within the intent to degrade, humiliate or demean the person touched or with the intent of arousing or appealing to or gratifying the lust, passion or sexual desires of the actor.

110.   It also defines "intimate parts" as "the genital area, groin, inner thighs, buttocks, or breasts."

111.   Idaho Code §§18-903 and 924 were designed to prevent harm, whether physical, emotional, or psychological, to persons who are the victim of unlawful touching conduct prohibited by Idaho Code.

112.   Defendant Yano's Conduct on December 1, 2019, constituted violations of Idaho Code §§ 18-903 and 924 and constitute negligence per se.

113.   Yano's Conduct, as alleged hereinabove, was willful, reckless, and intentional and constitutes a gross deviation from the reasonable standards of conduct.

114.   As a direct and proximate result of Yano's violation of Idaho Code, Ms. Staup suffered injuries and damages. As a result, she has been forced to incur necessary expenses for medical, psychological, and counseling care and expenses, emotional distress, loss of enjoyment

of life, future counseling costs and expenses, lost wages, physical and mental stress, and will continue to incur such expenses for such care, together with future pain and suffering, physical stress, suffering, and impairment. The specific amount of these damages to be proven at trial is in excess of $25,000.00.

115.    Plaintiff has been compelled to employ the services of Morris Bower & Haws PLLC to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees for the services of said attorneys.

116.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

## SEVENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress—Defendant Yano)

117.    Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

118.    Defendant Yano owed a duty to Plaintiff to conduct himself in such a manner as to prevent physical, emotional, and/or psychological harm to Ms. Staup. Defendant Yano's actions, as alleged hereinabove, were reckless and/or intentional and fell below the applicable standards of conduct owed to Plaintiff at the times and places alleged.

119.    Defendant Yano intentionally and recklessly engaged in conduct (i.e., groping her genital area) that would harm, annoy, scare, harass, and/or threaten Ms. Staup.

120.    As a direct and proximate result of Yano's violation of Idaho Code, Ms. Staup suffered injuries and damages.

121.    As a result of Defendant Yano's conduct, Ms. Staup has been forced to incur necessary expenses for medical, psychological, and counseling care and expenses, emotional distress, loss of enjoyment of life, future counseling costs and expenses, lost wages, physical and

mental stress, and will continue to incur such expenses for such care, together with future pain and suffering, physical stress, suffering, and impairment. The specific amount of these damages to be proven at trial is in excess of $10,000.00.

122.    Plaintiff has been compelled to employ the services of Morris Bower & Haws PLLC to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees for the services of said attorneys.

123.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

### EIGHTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress—Defendant Yano)

124.    Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

125.    Defendant Yano owed a duty to Plaintiff to conduct himself in such a manner as to prevent physical, emotional, and/or psychological harm to Ms. Staup. Defendant Yano's actions, as alleged hereinabove, were negligent and fell below the applicable standards of conduct owed to Plaintiff at the times and places alleged.

126.    Defendant Yano intentionally and recklessly engaged in conduct (i.e., groping Ms. Staup's genital area) that would harm, annoy, scare, harass, and/or threaten Ms. Staup.

127.    As a direct and proximate result of Yano's violation of Idaho Code, Ms. Staup suffered injuries and damages. Specifically, her injuries include but are not limited to: physical illness from worry, concern, and stress, crying, humiliation, headaches, fear, and anxiety.

128.    As a result of Defendant Yano's conduct, Ms. Staup has been forced to incur necessary expenses for medical, psychological, and counseling care and expenses, emotional

distress, loss of enjoyment of life, future counseling costs and expenses, lost wages, physical and mental stress, and will continue to incur such expenses for such care, together with future pain and suffering, physical stress, suffering, and impairment. The specific amount of these damages to be proven at trial is in excess of $25,000.00.

129.    Plaintiff has been compelled to employ the services of Morris Bower & Haws PLLC to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees for the services of said attorneys.

130.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

## <u>DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF</u>

Plaintiff demands a trial by jury on all issues properly triable by a jury in this action pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.    For money damages for Plaintiff from Defendants under the theories of discrimination on the basis of sex, retaliation, negligent supervision, negligent training, intentional battery, negligence per se, and intentional and negligent infliction of emotional distress in a sum to be determined at trial in excess of $25,000.00, and representing Plaintiff's general and special damages for past and future medical/psychological care, pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and lost wages which are reasonable in the premises but, at a minimum, meet the jurisdictional threshold of this Court;

B.    Other civil penalties as provided for by law;

C.      For leave to amend this pleading to add additional causes of action and/or claims for damages, including punitive damages, based upon the outcome of discovery and pretrial proceedings in this matter;

D.      For Plaintiffs' reasonable costs and attorney fees incurred herein, including but not limited to 42 U.S.C. §2000e-5(k), Idaho Code § 12-121, Idaho Rules of Civil Procedure 54, or any combination thereof; and for such other and further relief as the Court deems just and equitable in the premises.

DATED:  November 30, 2021.

MORRIS BOWER & HAWS PLLC


_/s/ Gabriel M. Haws_
Gabriel M. Haws
*Attorneys for Plaintiff*

**VERIFICATION**

STATE OF IDAHO    )
                            ) ss.
County of Canyon    )

I, Angela M. Staup, being first duly sworn upon oath, hereby depose and say that I have

read the foregoing Verified Complaint and Demand for Jury Trial and the matters alleged in said

Complaint are true and correct.

DATED this 30th day of November, 2021.

_____
Angela M. Staup

SUBSCRIBED AND SWORN to before me this 30th day of November, 2021.



_____
Notary Public for Idaho
Commission expires: 04/19/2022

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 22